# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
July 1, 2002 Session

## TONYA PETRECE RAY v. WILLIAM MARTIN RAY

**Appeal from the Circuit Court for Davidson County**
**No. 99D-662     Carol Soloman, Judge**

---

### No. M2002-01553-COA-R10-CV - Filed July 9, 2002

---

This extraordinary appeal involves a dispute over the custody of four-year-old twins. On October 5, 2001, this court vacated an order of the Circuit Court for Davidson County granting custody of the twins to the former husband of their biological mother and remanded the case for the purpose of determining whether the twins' biological father is currently fit to have custody and whether placing the twins in his custody will expose them to substantial harm. On June 27, 2002, the trial court declined to permit the biological father to continue visitation with the twins pending court-ordered psychological evaluations of the biological father and the twins. We have determined that the June 27, 2002 order must be vacated because it lacks evidentiary support and is based on a significant misinterpretation of our October 5, 2001 opinion.

**Tenn. R. App. P. 10 Extraordinary Appeal; Order of the Circuit Court Vacated**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Clark Lee Shaw, Nashville, Tennessee, for the appellant, Stephen Eric Staggs.

John M. L. Brown, Nashville, Tennessee, for the appellee, William M. Ray.

### MEMORANDUM OPINION[1]

Tonya Petrece Ray gave birth to twins on December 19, 1997. Even though she was married to William Martin Ray at the time, the children's undisputed biological father was Stephen Eric

---

[1]Tenn. Ct. App. R. 10 provides:

> The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion, it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Staggs with whom Ms. Ray had had a romantic tryst in early 1997. Mr. Staggs intervened in the Rays' 1999 divorce proceeding to formally establish his parentage of the twins and to obtain custody. The Rays vigorously opposed Mr. Staggs's request for custody.

Following a bench trial, the trial court concluded that Ms. Ray was unfit to have custody of her children. The court then awarded custody of the twins to Mr. Ray because he was comparatively more fit than Mr. Staggs. After Mr. Staggs's lawyer pointed out that the trial court had used the wrong custody standard, the trial court entered another order concluding "by very clear and convincing proof that there is a substantial risk and danger of great harm to these children if placed with the natural parents." Notwithstanding this finding, the trial court granted Mr. Staggs weekly supervised visitation and extended unsupervised visitation during the summer of 2000 and apparently the summer of 2001.

Mr. Staggs appealed the trial court's custody decision to this court. On October 5, 2001, we issued an opinion vacating the custody orders.[2] We concluded, in part, that

> The evidence presented at the December 1999 hearing regarding Mr. Staggs does not clearly and convincingly depict a person who would be an unfit parent. By the time of the hearing, Mr. Staggs had held a well-paying job for over eighteen months and had earned the trust and respect of his employer. He [was] also married to a woman he had been dating for approximately eighteen months, and he had been fully integrated into her family. He had earned the admiration and respect of his wife's parents for his honesty and tenacity. He had also gained experience with young children and was serving as a volunteer coach for a YMCA youth basketball program. In light of this evidence, we find that the trial court placed undue weight on Mr. Staggs's past conduct rather than on his current fitness to have custody of his children.

Based on this conclusion, we vacated the portions of the January 12, 2000 and April 3, 2000 orders denying Mr. Staggs's petition for custody of the twins and

> remand[ed] the case to the trial court with directions to conduct a hearing consistent with this opinion to determine whether Mr. Staggs is currently fit to have custody of his children and whether granting Mr. Staggs custody will expose his children to substantial harm. Pending this hearing, the trial court shall prescribe appropriate visitation for Mr. Staggs and his children.

---

[2]*Ray v. Ray*, No. M2000-00895-COA-R3-CV, 2001 WL 1173266 (Tenn. Ct. App. Oct. 5, 2001) (Tenn. R. App. P. 11 application pending).

Mr. Ray filed a Tenn. R. App. P. 11 application for permission to appeal on November 30, 2001, which has not yet been acted on by the Tennessee Supreme Court.

On April 29, 2002, Mr. Staggs filed a motion requesting extended summer visitation during 2002 on essentially the same terms as his unsupervised visitation during the summers of 2000 and 2001. The trial court heard argument on this motion on May 31, 2002. According to an uncontradicted account of the May 31, 2002 proceeding filed with this court by Mr. Staggs:

> 2.     Judge Soloman stated that according to the Appellate Court opinion, she felt that she could not give Mr. Moore [Staggs] an extended visitation because she felt that Mr. Moore was a dangerous person, that the minor twin children would be exposed to substantial risk of harm, that Mr. Moore was a bad person, and that she thought the Court of Appeals felt that Mr. Moore was an unfit parent and that according to their opinion, Judge Soloman did not go far enough in her order. Judge Soloman acknowledged that she had allowed the extended summer visitation for the previous two years, but she stated that she felt the Appellate Court, in their opinion, did not want her to allow any unsupervised visitation because Mr. Moore was a dangerous person. Judge Soloman stated that she was having [a] difficult time interpreting the Court of Appeals [sic] opinion and that she kept a copy of the decision near her all the time. John M. L. Brown, attorney for Mr. Ray, stated that in last year's agreed order allowing Mr. Moore to have an extended summer visitation with the minor children, Mr. Ray stated that he reluctantly agreed to allow the minor children to go with Mr. Moore. Mr. Brown stated that Mr. Ray was opposed to Mr. Moore having any summer or holiday visitation with the minor children.

> 3.     Mr. Moore's counsel asked that he be able to see the children on Father's Day for an extended visitation and Judge Soloman asked Mr. Ray what he had planned to do with the children for Father's Day. Mr. Ray stated that he was going to spend the day with them, then he further stated that he was going to take them out of town. Judge Soloman then stated that the children would also be able to see Mr. Ray's father, and then offered to allow Mr. Moore to spend one hour of supervised visitation with the children at McDonald's for dinner on Father's Day. Mr. Moore declined. Judge Soloman stated that Mr. Ray was the minor children's father, and that Mr. Moore was their natural father. Mr. Shaw objected to that terminology.

> *          *          *

5. Judge Soloman *sua sponte* indicated that Mr. Moore could not have an extended visitation with the minor twin children until he underwent a psychological evaluation and the minor children underwent a psychological evaluation determining what harm, if any, it would cause the children. She suggested Ray Potts and *sua sponte* ordered Mr. Ray to make an appointment for the children. Mr. Shaw asked the Court to set a time limit and Judge Soloman refused but she did set another court date for July 19, 2002. Judge Soloman stated she would take the issues under advisement until the evaluations had been completed.

On June 19, 2002, Mr. Staggs filed a petition to hold Mr. Ray in contempt for refusing to permit his regular Sunday visitation on June 16, 2002. The trial court summarily declined to order Mr. Ray to show cause and dismissed the petition. On June 27, 2002, the court filed an order directing Mr. Ray to "take the subject children immediately for a thorough psychological evaluation" and ordering Mr. Staggs to "make an appointment and . . . submit himself to a full and complete psychological evaluation" once the children have been evaluated. The trial court also suspended all of Mr. Staggs's visitation "pending the outcome [of] the psychological evaluations prescribed above" and set the matter "for review" on July 19, 2002.

Mr. Staggs filed an application for extraordinary appeal with this court on July 1, 2002, along with a motion for stay of the order suspending visitation and to remove the trial judge from the case on the ground of bias. In response to this court's order, Mr. Ray filed a response to Mr. Staggs's application and motions on July 8, 2002. While he did not take issue with Mr. Staggs's account of the May 31, 2002 proceedings, Mr. Ray asserts that an extraordinary appeal is unnecessary because the "trial court has done nothing more than show concern for the welfare of the subject children."

We have determined that we have subject matter jurisdiction over Mr. Staggs's Tenn. R. App. P. 10 application because the Tennessee Supreme Court has not at this time exercised jurisdiction over the case by granting the pending Tenn. R. App. P. 11 application. We have also determined that an extraordinary appeal is warranted in this case and that Mr. Staggs's application, Mr. Ray's response thereto, and the documents attached to the application fully set forth the parties' positions and the facts needed to decide this appeal. Accordingly, to save the parties the additional time and expense of further briefing and oral argument, we suspend the application of Tenn. R. App. P. 24-26 and 29 and find, in accordance with Tenn. R. App. P. 35(c) that oral argument is unnecessary. *See* Tenn. R. App. P. 2; *Dowell v. Minor*, No. M2000-00378-COA-R9-CV, 2000 WL 489740 (Tenn. Ct. App. Apr. 26, 2000) (No Tenn. R. App. P. 11 application filed); *Hammock v. Sumner County*, No. 01A01-9710-CV-00600, 1997 WL 749461 (Tenn. Ct. App. Dec. 5, 1997), *pet. reh'g denied*, (Tenn. Ct. App. Dec. 30, 1997) (No Tenn. R. App. P. 11 application filed).

The trial court's June 27, 2002 order represents a clear departure from the accepted and usual course of judicial proceedings for three reasons. First, it is based on a palpable misinterpretation of our October 5, 2001 opinion. Nothing in this opinion concludes, or even intimates, that Mr. Staggs is an "unfit person," that the trial court did not "go far enough" in its original order denying Mr.

Staggs's request for custody, or that this court "did not want . . . [the trial court] to allow any unsupervised visitation because . . . [he] was a dangerous person." To the contrary, we held that the evidence "does not clearly and convincingly depict a person who would be an unfit parent" and that the trial court's reasons for denying Mr. Staggs custody of his children "placed undue weight on Mr. Staggs's past conduct rather than on his current fitness to have custody of his children." Accordingly, we vacated the denial of Mr. Staggs's custody request and remanded the case with instructions to conduct a hearing into Mr. Staggs's current fitness to have custody of his children. Pending this hearing, we succinctly directed the trial court to "prescribe appropriate visitation for Mr. Staggs and his children."

The second defect in the reasoning in the June 27, 2002 order is that it is not based on any material evidence regarding Mr. Staggs's current fitness to exercise unsupervised visitation with his children. He has exercised extended unsupervised visitation for the past two summers, apparently without incident. In its present state, the record contains no evidence of any conduct by Mr. Staggs that provides an appropriate basis to deny him visitation on at least the same terms that he has exercised in the past. Mr. Ray's opposition to Mr. Staggs's unsupervised visitation does not provide sufficient grounds to prevent Mr. Staggs from exercising unsupervised visitation. In the absence of evidence that the children will be harmed if Mr. Staggs is permitted visitation, one would have thought that the trial court would have expanded Mr. Staggs's visitation rights with the view toward the eventual transition of custody from Mr. Ray to Mr. Staggs.

The third defect in the June 27, 2002 order is the trial court's decision, apparently on its own initiative, to require that Mr. Staggs and the twins be subjected to psychological evaluations. While Tenn. R. Evid. 706 permits a trial court to appoint expert witnesses, these appointments should not be made without some factual predicate for the necessity of such an unusual step. The factual predicate for requiring parents and children to submit to psychological examinations under Tenn. R. Civ. P. 35 is discussed at some length in *Odom v. Odom*, No. M1999-02811-COA-R3-CV, 2001 WL 1543476, at *4-9 (Tenn. Ct. App. Dec. 5, 2001), *pet. reh'g denied*, (Tenn. Ct. App. Jan. 8, 2002) (No Tenn. R. App. P. application filed). The record indicates that the trial court lacked a factual basis for ordering that Mr. Staggs and the children undergo psychological evaluations.

Accordingly, we vacate the June 27, 2002 order and remand the case for further proceedings consistent with this opinion and this court's October 5, 2001 opinion. At the hearing currently scheduled for July 19, 2002, the trial court is directed to provide the parties an opportunity to present evidence both in favor of and in opposition to Mr. Staggs's request for extended summer visitation and to make a decision regarding this request for visitation based on the evidence. At this juncture, we deny Mr. Staggs's request to remove the trial judge from this case because errors in reasoning and failure to follow established procedures do not necessarily indicate bias, either in favor of or against a particular party.

_____
WILLIAM C. KOCH, JR., JUDGE